TONY SWAB, RESPONDENT, v. SMITH BROTHERS, INC., ET AL., APPELLANTS.*

Kansas City Court of Appeals. April 30, 1928.

---

*Corpus Juris-Cyc References: Master and Servant, 39CJ, section 1266, p. 1049, n. 15; section 1336, p. 1149, n. 59; Removal of Causes, 34 Cyc, p. 1274, n. 93.

*Lawson & Hale* and *Hogsett & Boyle* for respondent.

*Henry S. Conrad, L. E. Durham, Hale Houts* and *Spurgeon L. Smithson* for appellants.

ARNOLD, J.—This is an action in damages for personal injury.

Defendant is a corporation engaged in general construction and contracting work in the State of Missouri and elsewhere. At the time of the injury complained of, defendant was engaged in the construction of a tunnel under the Missouri River, beginning in Clay county, Missouri, about a mile northwest of North Kansas City, the said tunnel being part of the new waterworks system for the city of Kansas City, Missouri. Plaintiff was an employee of defendant and was working in said tunnel in Clay county, near and under the north bank of the Missouri River. The petition included as defendants Roy Gasoway and Edward Corbin, alleged to have been foremen and vice principals of defendant Smith Brothers. Before the trial there was a voluntary dismissal as to Gasoway, and at the close of plaintiff's evidence, the court directed a verdict for defendant Corbin. The trial proceeded as to defendant Smith Brothers.

The petition alleges that on March 25, 1926, plaintiff was in the employ of defendant and working in said tunnel at about 4:15 of said day when an explosion of gas occurred in said tunnel, through the carelessness and negligence of the defendants and each of them, as a result of which plaintiff was seriously and permanently injured. The specific charge of negligence in the petition is that defendants negligently permitted combustible gases to be and remain in large quantities in the tunnel when they knew, or by the exercise of ordinary care, could have known of their presence in time, by the exercise of ordinary care and by the means and appliances at hand, to have removed said gases from the tunnel prior to the explosion, when the defendants knew, or should have known, that said gases were likely to cause an injury to employees; that defendants negligently ordered plaintiff to work in the tunnel when they knew or by the exercise of ordinary care could have known that the tunnel was not reasonably safe; that they negligently caused the ventilating fan to be stopped; negligently assured plaintiff that the tunnel was reasonably safe, and negligently caused, suffered or permitted gas to be ignited and failed to take proper precautions to prevent such ignition.

The answer of defendant Smith Brothers was a general denial and a plea of contributory negligence, and that if any employees of defendant were guilty of negligence at the time and place alleged, such employees were fellow-servants of plaintiff. Defendant Corbin filed answer in due time.

It appears plaintiff abandoned the charges relative to his being ordered to work in the tunnel, being assured of safety and the stopping of the fan, and that he failed to submit to the jury the charge that the gas was negligently caused or permitted to be ig-

nited and that no proper precaution was taken to prevent its ignition. The question as to whether or not defendants permitted combustible gas to form and remain in the tunnel, although defendants knew, or by the exercise of ordinary care should have known of the presence of said gas in large quantities in said tunnel, in time to have removed the same by the means at hand, to-wit, the use of the blower and air line, was submitted in instruction No. 1.

As stated, the record shows that on December 1, 1926, at the close of plaintiff's evidence, the court instructed the jury that its verdict must be for defendant Corbin, to which ruling the plaintiff objected and excepted, but did not appeal therefrom. Thereupon and on the same day, Smith Brothers, Inc., filed its petition and bond for removal of the cause to the district court of the United States in and for the western division of the western district of Missouri, notice thereof being served upon counsel for plaintiff, and acknowledgment obtained in writing. The application and bond for removal, on the same day, were presented to the court and thereupon denied, to which ruling defendant Smith Brothers objected and excepted.

The cause went to trial, resulting in a verdict for plaintiff in the sum of $3000 and against defendant Smith Brothers, and from the judgment entered thereon said defendant appeals.

The testimony shows plaintiff had been a coal miner and had been in the employ of defendant company for about ten days prior to the injury; that he worked regularly in an eight-hour shift, beginning at three o'clock in the afternoon and ending at eleven o'clock at night, and that he went to work at the usual hour on the day in question; defendant Corbin was his foreman. Plaintiff, Corbin and three other employees were engaged in constructing a concrete aqueduct in the tunnel at a point about 165 feet north of a shaft which led from the surface of the ground down to the level of the tunnel. At about 4:15 to 4:30 in the afternoon the explosion of gas occurred which threw plaintiff to the floor of the tunnel and caused severe burns about his face and hands. Plaintiff and his companion reached the bottom of the shaft whence they were taken to the surface in the hoist and thence removed to a hospital. It was in evidence and is undisputed that natural gas was encountered as the tunnel was excavated and extended, and that it had been escaping into the tunnel in varying quantities while the work was progressing, and that defendant had knowledge of this condition.

It is also in evidence that defendant had equipped the tunnel with an air line, constructed down the shaft and into the tunnel for some distance, made of galvanized iron and projected fur-

ther into the tunnel by a vancas tubing called a "sail," and at the surface of the ground there was a blower by which fresh air was forced into the tunnel through the air line. This apparatus had a dual purpose, to-wit, to remove the gas and to furnish fresh air for the laborers.

There was evidence in plaintiff's behalf that the blower was not in operation on the day of the explosion, nor for three days prior thereto; that workmen had been engaged in moving the blower and installing new sections of pipe for the air line shaft leading down to the tunnel, and therefore that the blower would not have been effective to force fresh air into the tunnel had it been in operation. It appears from the evidence in defendant's behalf that the blower was in operation at the time of the explosion and had been so continuously for three days prior thereto; that the work on the air line was not such as to interfere with the forcing of fresh air into the tunnel; that the line had been intact for an opening at one or two joints, and that these openings had been closed on the morning of the accident.

The record is silent as to what ignited the gas, thus causing the explosion. It is admitted by defendant that plaintiff's injuries were painful and at the outer edges of his ears the effects would be permanent. There was medical testimony that his vision was less than normal and plaintiff complained of difficulty in the use of his eyes. He testified that prior to the accident his vision had been good.

There is no complaint as to the amount of the verdict and judgment thereon. The petition for removal alleged diversity of citizenship; that defendant Smith Brothers was a Texas corporation and a citizen and resident of that state; that the amount involved was in excess of $2000, to-wit, $20,000; that plaintiff voluntarily dismissed as to defendant Gasoway; and defendant Corbin, a resident of Missouri, was fraudulently joined by plaintiff for the purpose of preventing removal to the Federal court, in that plaintiff, at the trial, produced no withness and made no effort to prove any negligence as to defendant Corbin; that, at the trial, plaintiff had testified to no facts in support of the charge of negligence against Corbin, and, in fact, had denied the truth of the allegations of negligence as to Corbin; that plaintiff had no reason to believe, and did not believe, that Corbin was jointly liable with Smith Brothers, and that said fraud had not previously come to the knowledge of defendant.

There are three assignments of error, as follows: (1) That the court erred in denying defendant's petition for removal to the Federal court and in continuing to entertain jurisdiction of the cause after the presentation of said petition and bond for removal.

(2) The court erred in refusing, at the close of all the testimony, to direct a verdict for defendant, and (3) in overruling defendant's motion for a new trial. A solution of assignments 1 and 2 will carry with it a ruling on assignment 3.

In support of the first charge of error defendant urges the petition for removal alleges facts which would constitute a fraudulent joinder by plaintiff of defendant Corbin who, at the time said petition was filed, was the sole defendant other than Smith Brothers. It is insisted the allegation that plaintiff had no reason to believe, and did not believe, that Corbin was jointly liable and that plaintiff had closed his case without testifying or offering evidence of any other witness tending to prove any allegation of negligence as against Corbin but that on the contrary had in part denied the truth of his allegations of negligence against Corbin were sufficient. [Citing Wecker v. Nat'l Enameling Co., 204 U. S. 1. c. 185; Wilson v. Iron & Steel Co., 257 U. S. 92, 42 Sup.. Ct. Rep. 35; Gustafson v. Ry. Co., 128 Fed. 85; Hunter v. Railroad, 188 Fed. 1. c. 647; Gibson v. Ry. Co., 215 Fed. 1. c. 26.] In the Wilson case the petition charged—"that the plaintiff personally and intimately knew every person who could by any possible chance have caused his injuries, and knew the coemployee was not in any degree whatsoever responsible therefor; and that, as the plaintiff well knew all along, the coemployee was not guilty of any joint negligence with the employer, was not present when the plaintiff's injuries were received, and did no act or deed which caused or contributed to such injuries."

The petition for removal was held sufficient and the removal proper where the allegations were not denied by plaintiff in a plea to the jurisdiction after the cause was removed.

In the Gustafson case the petition for removal alleged—"that the plaintiff had no reasonable ground upon which to base a cause of action for recovery against the defendant Hanna," and that Hanna was joined for the sole purpose of preventing removal. The petition was held sufficient.

It is urged that the failure of plaintiff to introduce any evidence or to testify in his own behalf in support of the allegations against Corbin amounted to a voluntary dismissal of the case against him, and conclusively shows the joinder of Corbin was fraudulent. [Powers v. Railroad, 65 Fed. 1. c. 131; Arrowsmith v. Railroad, 57 Fed. 1. c. 169, 170.] It is claimed these cases support defendant's contention. It is true that in the Powers case, Judge TAFT said:

"The joinder of a fireman or an engineer or a conductor as defendants in an action to recover $25,000 against a railroad company, without explanation, of itself raises a suspicion that it is

not done merely to recover judgment against the employees; and when a cause is dismissed in the Federal court in order to make such employees party defendants to a new suit, and after fear of removal is passed they are then dismissed, the inference as to the purpose of their joinder is too plain to need much discussion. In Arrowsmith v. Railroad Co., 57 Fed. 165, Judge LURTON made a similar inference from an analogous, though not the same state of facts."

In the Weeker case it was objected that there was no proof that the plaintiff knew of the true relation of the codefendant to the nonresident defendant and consequently could not be held guilty of fraud in joining him in the action. The court held that even in cases where the direct issue of fraud is involved knowledge may be imputed where one wilfully closes his eyes to information within reach. It would seem that the cases cited by defendant support its contention, but the facts of those cases are not the same as here. That is to say, in none of the cited cases was the petition for removal filed after defendant was required by statute to answer or plead.

It is plaintiff's position, and we think the correct one, that as the petition for removal alleging fraudulent joinder was filed after the nonresident was required to answer or plead, it came too late. Section 1011, United States Compiled Statutes (removal act) provides:

"Whenever any party entitled to remove any suit mentioned in the last preceding section, except suits removable on the grounds of prejudice or local influence, may desire to remove such suit . . . he may make and file a petition duly verified in such suit in such court at the time, or at any time before defendant is required by the laws of the State, or rule of the State court in which such suit is brought to answer, or plead to the declaration or complaint of the plaintiff for removal of such suit, etc."

It is clearly the intention of the statute that a petition for removal must be filed "at the time or any time before the defendant is required" to plead or answer to the petition on or before the return day, as required by the summons. [Sec. 1225, R. S. 1919.] This rule is applied in Whitcomb v. Smithson, 175 U. S. 635, 637. and we think the decision in that case concludes the matter against defendant's contention here. The court said:

"The contention here is that when the trial court determined to direct a verdict in favor of the Chicago Great Western Railway Company, the result was that the case stood as if the receivers had been sole defendants, and that they then acquired a right of removal which was not concluded by the previous action of the circuit court. This might have been so if when the cause was

called for trial in the state court plaintiff had discontinued his action against the railway company, and thereby elected to prosecute it against the receivers solely, instead of prosecuting it on the joint cause of action set up in the complaint against all the defendants. [Powers v. Chesapeake & Ohio Railway, 169 U. S. 92.] But that is not this case. The joint liability was insisted on here to the close of the trial, and the nonreliability of the railway company was ruled *in invitum.*"

In the case before us the plaintiff did not dismiss as to the resident defendant, but instead excepted to the ruling of the court, in directing a verdict for Corbin. Plaintiff pleaded joint liability in his petition and this liability was insisted upon to the close of the trial. See, also, Railway v. Herman, 187 U. S. 63, where the court held:

. "The trial court may have erred in its ruling, or there may have been evidence which, though insufficient to sustain a verdict, would have shown that plaintiff had reasonable ground for a bona-fide belief in the liability of both defendants. In these circumstances, the case comes within Smithson v. Whitcomb, and the judgment must be affirmed." [Also note the following cases: Craig v Railroad, 271 Mo. 516, 197 S. W. 141; Moeller v. Railway, 211 Fed. 239; Lathrop, etc., Co. v. Imp. Co., 215 U. S. 246, et seq.] It has been held that the right of removal depends upon the state of the record in the state court at the time removal is sought. [Ry. Co. v. Thompson, 200 U. S. 1. c. 216; Wilson v. Oswego, 151 U. S. 1. c. 66; Railway v. Willard, 220 U. S. 413, 426.] We therefore must hold that the petition for removal was not filed in time and the ruling of the trial court in refusing the removal was proper. Plaintiff attacks the sufficiency of the petition for removal but under this holding, it is not necessary to determine the point.

It is urged by defendant that the court erred in refusing to direct a verdict for Smith Brothers. And, in this connection it is argued that the evidence was insufficient to establish negligence on the part of defendant in failing "by the use of the appliances at hand" to remove the gas, since plaintiff's witnesses testified that the ventilating plant was being changed, and that during the process of change the blower, even if running, would not force fresh air into the tunnel. Defendant's witnesses testified that the changes in the aid line had been effected and all breaks and gaps closed, and also that the blower had been in operation at all times for the three days next preceding the accident and up to the time of the explosion. We can see in this situation nothing more than a disputed fact for the determination of the jury. In this ruling there is nothing contrary to our holding in the case of

Totten v. Smith Bros. (No. 15854), decided at this term and not yet published.

In this connection it is further urged that in the case at bar there is no proof as to what caused the explosion or that it was caused by any negligence of defendant. It is defendant's position that the explosion of the gas was the proximate cause of the injury, and that plaintiff's evidence failing to establish this fact, his cause fails. We think this position untenable. Defendant relies largely upon the reasoning in the case of Gas Company v. Dabney, 79 Kans. 820. That case involved the explosion of a gas and oil well out in the open. The situation in that case is readily distinguishable from the one at bar. In Luengene v. Power Co., 86 Kans. 866, 871, there was an explosion of gas in a basement, and suit was instituted against the party who furnished the gas, the petition alleging defendant was negligent in failing to keep the pipes in proper condition and in allowing the gas to escape into the place of explosion. There was no evidence of the cause of the ignition. The court refused a peremptory instruction for defendant. The Supreme Court of Kansas differentiated between the Luengene and Dabney cases, saying:

"To hold that a man engaged in his usual work, exercising ordinary care and unwarned of any danger must when injured by such an explosion prove what intervening hand or agency caused the spark is unreasonable and in many cases would be impossible."

The court remarked that a cause of injury is not remote if, in accord with the usual experience of mankind, the result ought to have been anticipated, and if the intervening agency is something not likely to occur or to be foreseen, it is otherwise.

In the case at bar it is charged defendant was negligent in allowing the gas to accumulate in the tunnel. Applying the reasoning in the cases last cited, we must hold that there was no failure of proof of proximate cause. Gas having been allowed to accumulate in the tunnel, it is human experience that an explosion such as is shown in the evidence occurred, is not only a natural, but probable consequence which might reasonably have been foreseen. And so, we hold that the proximate cause of the explosion was the negligent act of defendant in permitting the gas to escape into the tunnel and to remain there. [Seals v. Whitney, 130 Mo. App. 412, 110 S. W. 35; Daneschocky v. Sieben, 193 S. W. 966; Shafir v. Sieben (Mo.), 233 S. W. 419; Fishell v. Am. Press, 253 S. W. 508; Rose v. Fruit Co., 201 Mo. App. 262, 211 S. W. 85.]

This disposes of all assignments of error urged by appellant. We fail to find reversible error of record and the judgment is accordingly affirmed. *Bland, J.*, concurs; *Trimble, P. J.*, absent.